IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH T. FitzSIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | FILED: JUNE 20, 2008 |
| JODY P. WEIS, DEBRA KIRBY, | ) | 08CV3558 |
| CATHLEEN RENDON, ROBERT | ) | JUDGE ZAGEL |
| COSEY, TIMOTHY MOORE and the | ) | MAGISTRATE JUDGE COLE |
| CITY OF CHICAGO, a municipal | ) | TG |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the plaintiff Joseph T. FitzSimmons, by his attorney Phillip J. Oliver, and for his Complaint against the defendants Jody P. Weis, Debra Kirby, Cathleen Rendon, Robert Cosey, Timothy Moore and the City of Chicago, a municipal corporation, states as follows:

### INTRODUCTION

1.      This is a civil action seeking damages against the defendants for committing acts under color of law and depriving the plaintiff of rights secured by the Constitution, the laws of the United States and the Constitution of the State of Illinois.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343(a). This Court has personal jurisdiction over the individual Defendants as each of them are residents of Illinois and all actions complained herein occurred in Chicago, Illinois. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this court pursuant to 28 U.S.C.§ 1391(b).  Defendants are residents of Cook County, Illinois and the events which give rise to Plaintiff's claims occurred in Cook County, Illinois.

**PARTIES**

4.      Plaintiff is a natural born citizen of the United States and a resident of Cook County, Illinois.

5.      That all times herein mentioned, Defendant JODY P. WEIS (Weis) was employed by the City of Chicago Police Department as Superintendent of Police; and was acting under color of state law as the employee, agent or representative of the City of Chicago Police Department and/or as a private person. Defendant Weis is being sued in his individual/personal capacity and as an official representative of the City of Chicago.

6.      That all times herein mentioned, Defendant, DEBRA KIRBY (Kirby) was employed by the City of Chicago Police Department as the exempt rank commanding officer of the Chicago Police Department's Internal Affairs Division; and was acting under color of state law as the employee, agent, or representative of the City of Chicago Police Department and/or as a private person. Defendant Kirby is being used in her individual/personal capacity and as an official representative of the City of Chicago.

7.      That all times herein mentioned, Defendant, KATHLEEN RENDON (Rendon) was employed by the City of Chicago Police Department as the commanding officer of the Chicago Police Department's Personnel Division; and was acting under color of state law as the employee, agent, or representative of the City of Chicago Police Department and/or as a private person. Defendant Rendon is being used in her individual/personal capacity and as an official representative of the City of Chicago.

8.     At all times herein mentioned, Defendant ROBERT COSEY (hereinafter Cosey) was employed by the City of Chicago Office of Professional Standards and/or Independent Police Review Authority as an investigator; and was acting under color of state law as the employee, agent, or representative of the City of Chicago Police Department and/or as a private person. Defendant Cosey is being used in his individual/personal capacity and as an official representative of the City of Chicago.

9.     At all times herein mentioned, Defendant TIMOTHY MOORE (Moore) was employed by the City of Chicago Police Department as a Sergeant of Police assigned to internal investigations; and was acting under color of state law as the employee, agent, or representative of the City of Chicago Police Department and/or as a private person. Defendant Moore is being used in his individual/personal capacity and as an official representative of the City of Chicago.

10.     At all times herein mentioned, the defendant CITY OF CHICAGO is a municipal corporation, duly created and established by virtue of and under the laws of the State of Illinois; and maintained, managed and/or operated the City of Chicago Police Department; and was at all relevant times the employer of defendants Weis, Kirby, Rendon, Cosey and Moore.

**FACTUAL ALLEGATIONS**

11.     Plaintiff was employed by defendant CITY OF CHICAGO from 1992 through March of 2008 as a sworn peace officer, holding the rank of Lieutenant of Police from 1998 to March of 2008. In March of 2008 Plaintiff Joseph FitzSimmons had reached the age of sixty years old and had completed more than thirty years of active service (1970-1986 & 1992-2008) as a sworn peace officer employed by the Defendant, CITY OF CHICAGO.

12.     Beginning in the year 2006 Plaintiff, Joseph FitzSimmons made known his intentions to retire from the police department of the City of Chicago as a sworn peace officer in or about March of 2008. On information and belief, Plaintiff states that this avowed intention was known to Defendants Kirby, Rendon, Cosey and Moore prior to March of 2008.

13.     During a period beginning in 2006 and continuing through March of 2008 the Plaintiff was named as an "accused member" in certain internal administrative investigations conducted by Defendants Kirby, Cosey and Moore.

14.     The protocols and policies of the Chicago Police Department (as explicitly stated in Defendants' "General Order 93-03") require that administrative investigations of the sort referred to herein be conducted and completed within thirty days. A copy of Defendants' policy statement designated "General Order 93-03" is attached hereto as EXHIBIT 1.

15.     On or about January 18, 2007 the Plaintiff filed a written complaint with the Attorney Registration and Disciplinary Commission of the Supreme Court of the State of Illinois against Defendant Debra Kirby and others. The complaint alleged that the internal disciplinary system of the Chicago Police Department was used to harass, intimidate, and to oppress a claimant in a pending administrative action. A copy of the written complaint is attached hereto as EXHIBIT 2.

16.     On or about January 18, 2007 the Plaintiff filed a complaint with the United States Attorney for the Northern District of Illinois against Defendant Debra Kirby, among others. The complaint requested that an investigation be conducted into Kirby's conduct of harassing and intimidating a witness in a pending EEOC investigation in violation of federal law. A copy of  the written complaint is attached as EXHIBIT 3.

17.     Thereafter, on or about September of 2007 the Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights wherein the Defendant Kirby and the Defendant Moore were named as parties for engaging in retaliatory actions in response to matters pending before the Illinois Department of Human Rights and Illinois Human Rights Commission.

18.     At all times relevant hereto it was the policy and practice of the Chicago Police Department, and in particular Defendants Weis as superintendent and Rendon as personnel manager, to issue what is known as a "retired identification card" to those sworn peace officers employed by Defendant CITY OF CHICAGO who retire for pension purposes.

19.     At all times relevant hereto there was in force and in effect a certain statute in the United States Code known as "Carrying Of Concealed Firearms By Qualified Retired Law Enforcement Officers" (e.g., 18 U.S.C. § 926C) which provides that a "retired law enforcement officer" (such as the Plaintiff) "who is carrying identification required by subsection (d) may carry a concealed firearm." The provisions of 18 U.S.C. § 926C vested in the Plaintiff, as a retired law enforcement officer, a property right by virtue of his thirty years of service and retirement for pension purposes from a position law enforcement officer with Defendant CITY OF CHICAGO.

20.     On March 14, 2008 the Plaintiff Joseph FitzSimmons turned in his active duty identification and star to Defendant Rendon in the offices of the Personnel Division of the Chicago Police Department in accordance with the retirement policies and procedures of Defendant CITY OF CHICAGO. After turning in and delivering those active duty credentials to Defendant Rendon, the Plaintiff was told by Rendon that Rendon as the agent and representative of the CITY OF CHICAGO and Defendant Weis would not issue and deliver a retired identification card to Plaintiff.

21.     On information and belief the Plaintiff states that the action by Rendon on March 14, 2008 was the result of collusion and agreement between Defendants Weis, Kirby, Rendon, Cosey and Moore and was done for the purpose of retaliating against Plaintiff for his first amendment activities in reporting misconduct on the part of Kirby to the Attorney Registration and Disciplinary Commission, the office of the U.S. Attorney, and the Illinois Department of Human Rights.

22.     The role of Defendant Cosey in this agreement and collusion was as follows: Cosey was assigned to investigate an administrative allegation of misconduct against the Plaintiff Joseph FitzSimmons in June of 2007; Cosey thereafter purposefully and intentionally caused that administrative investigation to be ignored and neglected and, ultimately, never completed; and thereby created a situation where the administrative investigation (Complaint Register or C.R. Investigation) remain as an "open file" as of March 14, 2008 (more than nine months later).  This

action by Cosey was intentional and purposeful and violated the employer's policies and protocols for completing such an investigation in thirty days or less.

23.    The role of Defendant Moore in this agreement and collusion was as follows: Moore, as an investigator assigned to the Defendant CITY OF CHICAGO'S Internal Affairs Division was designated to investigate an allegation of administrative misconduct directed against the Plaintiff Joseph FitzSimmons in September of 2007; Moore thereafter purposefully and intentionally caused that administrative investigation to be ignored and neglected and, ultimately, never completed. Moore thereby created a situation where the administrative investigation (C.R. Investigation) remained as an "open file" as of March 14, 2008 (more than seven months later). This action by Moore was intentional and purposeful and violated the employer's policies and protocols for completing such an investigation in thirty days or less.

24.    The role of Defendant Rendon in this agreement and collusion was to deny the Chicago Police Department "retired identification card" to the Plaintiff and thereby effectively punish the Plaintiff for his legitimate and protected First Amendment expressions and further deny the Plaintiff his vested property rights created by the provisions of 18 U.S.C. § 926C.

25.    The role of Defendant Weis in this agreement and collusion was to ratify and approve all of the misconduct by Defendants Kirby, Rendon, Cosey, and Moore as described herein.

26.    The role and activities of Defendant Kirby in this agreement and collusion have taken place over a period of several years and constitute a continuing pattern and practice designed to impede or deny the constitutionally protected activities of the Plaintiff, to wit:

      a. Kirby directed and supervised an investigation into the Plaintiff's expression of religious belief in a private conversation with his daughter in 2006; and

      b. Kirby thereafter directed and supervised investigations into the Plaintiff's pro bono representation of clients in a case of gender based discrimination and a case of supervisory mistreatment of a Chicago Police Department police officer; and

- 6 -

c.  Kirby directed and supervised an on-going investigation of the Plaintiff's constitutionally protected access to the Circuit Court of Cook County pursuant to the filing of a lawsuit.

27.    The activities of Defendant Kirby, and the other Defendants as described herein, were consciously and purposefully designed to impede the Plaintiff's First Amendment rights, to discourage the Plaintiff's freedom of expression in voicing his opposition to gender based bias and official mistreatment and to chill the Plaintiff's access to the court system of the State of Illinois.

### COUNT I

**(42 U.S.C. §1983, Due Process Claim)**

28.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

29.    By reason of the conduct and collusion of all the Defendants, the Plaintiff Joseph FitzSimmons was deprived by his statutory property rights and entitlements specifically created by 18 U.S.C. § 926C pursuant to legislation by the Congress of the United States of America.

30.    The deprivation of the Plaintiff's statutory property rights and entitlements was without legal cause, legal justification and was illegally designed and undertaken by virtue of Defendants' official positions and status under color of state law.

31.    Therefore, Defendants Weis, Kirby, Rendon, Cosey and Moore are liable to the plaintiff pursuant to 42 U.S.C. §1983.

### COUNT II

**(42 U.S.C. §1983, First Amendment Claim)**

32.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

33.    Plaintiff is entitled under the First Amendment to the Constitution of the United States to file complaints against public officials and executives such as Debra Kirby with the Illinois

Attorney Registration and Disciplinary Commission, The United States Attorney's Office, and the Illinois Department of Human Rights.

34.    The Plaintiff exercised this constitutional protected right when he filed complaints with those agencies against Defendant Kirby as described above in paragraphs 15, 16 and 17.

35.    The conduct and actions of Defendants in their agreement and collusion to deny the Plaintiff a Chicago Police Department "retired identification card," was designed and intended to punish the Plaintiff for exercising his First Amendment freedom of expression to various authorities and agencies created by law; for exercising his First Amendment right to seek a remedy in the law; to impede and restrict his First Amendment rights in the future; and to chill his free exercise of those First Amendment rights.

### COUNT III

### (42 U.S.C. §1983, Equal Protection Claim)

36.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

37.    Plaintiff's Equal Protection rights were violated by Defendants Kirby and Moore.

38.    The conduct and actions of Defendants Kirby and Moore, raising the fact of Plaintiff's access to the Circuit Court of Cook County as a litigant, was designed and intended to punish the Plaintiff for seeking a remedy in the law; to impede and restrict his access to the court system of this state; and to chill his free exercise of the rights and privileges granted by the Constitution of the State of Illinois to those citizens of the United States residing in this state.

39.    That conduct and actions of Defendants Kirby and Moore were designed and intended to deny the Plaintiff the equal protection under the Constitution of the United States of America, the laws and rights granted under the Constitution, the Constitution of the State of Illinois, and the laws and rights granted under the Illinois Constitution.

## COUNT IV

### (42 U.S.C. §1983, Retaliatory Conduct Claim)

40.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

41.     Plaintiff is entitled under the First Amendment to the Constitution of the United States to file complaints against public officials and executives such as Debra Kirby with the Illinois Attorney Registration and Disciplinary Commission, the United States Attorney, and the Illinois Department of Human Rights.

42.     The Plaintiff exercised this constitutional protected right when he filed complaints with those agencies against Defendant Kirby as described above in paragraphs 15, 16 and 17.

43.     The Defendants Weis, Kirby, Rendon, Cosey and Moore retaliated against the Plaintiff, for exercising a constitutionally protected right, when they illegally and improperly refused to issue and deliver to the Plaintiff an identification card from the Chicago Police Department identifying Plaintiff Joseph Fitzsimmons as a retired law enforcement officer.

44.     The Defendants Weis, Kirby, Rendon, Cosey and Moore acted intentionally willfully and wantonly in singling out Plaintiff Joseph Fitzsimmons for illegal and retaliatory treatment.

45.     All of the acts and conduct complained of herein was done without legal cause or justification.

46.     As a result of the foregoing the Plaintiff Joseph Fitzsimmons suffered severe and extreme emotional distress, embarrassment, humiliation, and anxiety.

<u>COUNT V</u>

**(State Law - Retaliatory Conduct)**

47.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

48.    The Defendants Weis, Kirby, Rendon, Cosey, and Moore acted intentionally willfully and wantonly in singling out Plaintiff Joseph Fitzsimmons for illegal and retaliatory treatment.

49.    All of the acts and conduct complained of herein was done without legal cause or justification.

50.    As a result of the foregoing the Plaintiff Joseph Fitzsimmons suffered severe and extreme emotional distress, embarrassment, humiliation, and anxiety.

51.    The City of Chicago, pursuant to the principle of respondeat superior, is responsible for the wrongful conduct of Defendants Weis, Kirby, Rendon, Cosey and Moore as alleged above.

WHEREFORE, the plaintiff Joseph T. FitzSimmons, by and through his attorney Phillip J. Oliver, requests judgment as follows against the defendants, and individually on all claims:

1.    That the Defendants be required to pay plaintiff general damages, including emotional distress, in a sum to be ascertained;

2.    That the Defendants be required to pay plaintiff's special damages;

3.    That defendants, except the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to 42 U.S.C. §1988 equal access to justice act or any other applicable provisions;

4.    That Defendants, except the City of Chicago, be required to pay Plaintiff's punitive and exemplary damages in a sum to be ascertained;

5.    That Defendants be required to pay Plaintiff's costs of suit herein incurred;

6.    That the Plaintiff shall have such other and further relieve as this court may deem just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all counts

DATED:   June 20, 2008

                                                    Respectfully submitted,

                                                    /s/ Phillip J. Oliver

Phillip J. Oliver, LL.M.
THE LAW OFFICE OF ROBERT D. KUZAS, LTD.
222 North LaSalle St., Suite 200
Chicago IL   60601
312.629.1400

JUDGE ZAGEL
MAGISTRATE JUDGE COLE

DAJ

# G.O. 93-03          **Chicago Police Department**

**TITLE:**              **COMPLAINT AND DISCIPLINARY PROCEDURES**

**ISSUE DATE:**         **13 January 1993**

**EFFECTIVE DATE:**     **15 January 1993**

**DISTRIBUTION:**       **C**

**RESCINDS:**           **General Orders 82-14 and 80-03**

## I.    INTRODUCTION

The Superintendent is charged with the responsibility and has the authority to maintain discipline within the Department.   Accordingly, he must   ensure that internal investigations are conducted in accordance with the provisions outlined in this directive, in order to provide Department members with the fundamental principles of fairness and to ensure that members are afforded all their rights.  These rights will also be understood to mean the provisions of the applicable agreement (contract) between the City of Chicago/Department of Police and the particular organization (union) representing the members.

All members will comply with Department Rules and Regulations, directives and orders.   Members who fail to comply hinder the effective performance of the Department's functions.  This failure will be considered just cause for disciplinary action.  Sworn members will be held strictly accountable for properly exercising the authority they have been given to protect the rights, lives and property of all individuals. At the same time, Department members must be protected against false allegations of misconduct.  This can only be accomplished through a consistently thorough investigative process.   Prompt, thorough investigations will be conducted into allegations of misconduct to establish facts which can absolve the innocent and identify the guilty.

Certain rights afforded all Department members relative to the conduct of a disciplinary investigation are set forth in Addendum 1 of this directive.  However, members are reminded that they can be disciplined, even separated from the Department for refusing to answer questions, narrowly directed, relating to their official actions or obligations which were assumed upon appointment to the Department.

**G.O. 93-03    COMPLAINT AND DISCIPLINARY PROCEDURES**
**ISSUE DATE:   13 January 1993**



EXHIBIT

1

## II.   DISCIPLINARY PROCESS

All alleged or suspected violations of Department Rules and Regulations or directives by any member with the exception of temporary Department employees (i.e., seasonal temporary and internship program employees, etc.) sworn and civilian, of the Chicago Police Department will be processed in accordance with the provisions of this order.

The addenda which comprise this order set forth rights, responsibilities and procedures for conducting investigations relative to disciplinary matters.

| | | |
|---|---|---|
| A. | Addendum 1: | Department Member's Bill of Rights |
| B. | Addendum 2: | Specific Responsibilities |
| C. | Addendum 3: | Conduct of the Investigation |
| D. | Addendum 4: | Reporting and Review Procedures |
| E. | Addendum 5: | Special Situations |
| F. | Addendum 6: | Suspension/Options |
| G. | Addendum 7: | Summary Punishment |

Matt L. Rodriguez
Superintendent of Police

87-028 BW(jg)

# FACSIMILE MESSAGE

**ISSUE DATE:**           30 November 1993

**Message Number:**      93-011526

**To:**                  ALL DEPARTMENT MEMBERS

**From:**                Barbara B. McDonald, Director
                         Research and Development Division

**Message:**

**G.O. 93-03      COMPLAINT AND DISCIPLINARY PROCEDURES**
**ISSUE DATE:   13 January 1993**                              **Page 2**

Reference:    Department Forms

Administrative      Proceedings      Rights
(Statutory) - CPD44.105 (10A/92)

Waiver of Counsel/Request To Secure
Counsel - CPD44.106 (10A/92)

Effective at 0001 hours on 1 Dec 93, the Administrative Proceedings Rights (Statutory) form (CPD 44.105 (10A/92) and the Waiver of Counsel/Request to Secure Counsel form (CPD 44.106 (10A/92) will be obsolete and no longer used by the Department. Updated versions of these two forms identified as Administrative Proceedings Rights (Statutory) - (CPD 44.105 ) - (10/93) and Waiver of Counsel Request to Secure Counsel - (CPD 44.106) - (10/93) will be distributed to all Districts and Units by the Police Document Service Section on 30 Nov 93.

All Department members should annotate their copies of General Order 93-3 entitled "Complaint and Disciplinary Procedures" to reflect the 10/93 version of these forms.

Members are also reminded that the Administrative Proceedings Rights (Statutory) form and Waiver of Counsel/Request to Secure Counsel will no longer be required in conjunction with the Random Drug Testing Program as referenced in General Order 93-13 entitled "Random Drug Testing Program."

To be read at roll call for five consecutive days.

Barbara B. McDonald
Director
Research and Development Division

Law Office Of

# JOSEPH T. FitzSIMMONS

### 5908 N. Neva St.  -  Chicago IL 60631-2443  - voice [773] 631.8022
### fax  [773] 631.7077

Joseph T. FitzSimmons
-----------

Of Counsel:
Vincent J. O'Brien
Kevin B. O'Rourke

January 18, 2007

Mary Robinson
Administrator
ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
130 East Randolph Drive
Chicago, IL 60601-6219

Re:       Eileen L. Bell
          Debra Kirby
          Robert Anthony Flores

Dear Ms. Robinson:

Pursuant to the advice of the Ethics Inquiry Counsel [Susan Rhodes] of the Attorney Registration and Disciplinary Commission and both the spirit and intent of the Supreme Court's mandate in In Re Himmel, please be advised of the following.

I am the claimant in a race discrimination charge pending before the Illinois Department of Human Rights (CHARGE NO. 2005CF0881) and before the federal EEOC (EEOC NO. 21BA43335). The respondent is the City of Chicago/Department of Police.

Attached hereto is a copy of my "Request for Review" in that charge which I submitted to the Illinois Department of Human Rights on or about October 26, 2006. In that correspondence I call attention to the perjured statements made by a Chicago Police Department employee, Howard Denk. Under oath Denk informed the IDHR hearing officer that his ethnicity was "white". Nevertheless, all of the official records of that agency reflect that Denk is "hispanic". Denk's "hispanic" ancestry is a matter of record within the Chicago Police Department and within the office of the Corporation Counsel of the City of Chicago. Attorneys for the City represented Denk and argued about his "hispanic" ancestry in federal court in the past. (See the decision by the United States Court of Appeals for the Seventh Circuit (Judge Posner) which can be found at **296 F.3d 524 (2002)**.)

Several days ago I was informed that my "Request for Review" (copy attached) is the basis for allegations of misconduct brought by the employer. Attached you will find a copy of an "allegations" face sheet alleging that "on 26 October 2006 at 100 W. Randolph St." I used an official Department document in a manner that the agency objects to. That document was used for the public purpose of brining to light wrongdoing (i.e., the felony crime of PERJURY) by a Department member and his attorney, Eileen L. Bell.

**EXHIBIT**

2

Mary Robinson  —  Administrator
ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
January 18, 2007
Page 2


     Eileen L. Bell was the only recipient of that correspondence, aside from the Illinois Department of Human Rights review officer.  It is my belief that Ms. Bell has conspired with attorney Debra Kirby — the "Assistant Deputy Superintendent" of the Chicago Police Department's Internal Affairs Division — and attorney Robert Anthony Flores — the Chicago Police Department's "EEOC Officer" — to use the internal disciplinary system of the Chicago Police Department in an illicit and unethical manner to harass, to intimidate and to oppress a claimant in a pending administrative action.  I believe that the only possible explanation of the Department's action is that it is retaliatory and coercive, designed to gain an advantage in the IDHR administrative charge and investigation.

     I am a witness in a claim pending before a federal agency investigating the possibility of race discrimination.  Any action taken by the employer to purposefully harass and/or threaten me amounts to a federal crime.  Please accept this correspondence as my request that your agency immediately conduct an investigation into the conduct of the three named City of Chicago officials.


Very truly yours,



Joseph T. FitzSimmons
cc:    Patrick J. Fitzgerald — United States Attorney
       Law Office of Robert Kuzas
       file

Law Office Of

# JOSEPH T. FitzSIMMONS
**5908 N. Neva St. - Chicago IL 60631-2443 - voice [773] 631.8022**
**fax    [773] 631.7077**

Joseph T. FitzSimmons
----------
Of Counsel:
Vincent J. O'Brien
Kevin B. O'Rourke

January 18, 2007

Patrick J. Fitzgerald
United States Attorney
231 S. Dearborn St.
Chicago IL 60604

Re:    FitzSimmons v. Chicago Police Department
**EEOC NO. 21BA43335**

Dear Mr. Fitzgerald:

     Enclosed you will find a copy of my recent correspondence to the Administrator of the Attorney Registration and Disciplinary Commission. That correspondence is self-explanatory.

     I believe that the evidence gathered by the Illinois Department of Human Rights in the above-referenced EEOC investigation indicates the following:

1.    Howard Denk, a captain in the Chicago Police Department, committed the criminal offense of perjury on October 4, 2005 by intentionally and falsely stating his ethnic ancestry was "white" when he is, in fact, "hispanic";

2.    Eileen L. Bell, an attorney for the City of Chicago, purposefully and intentionally concealed the perjured nature of Denk's statements in order to mislead the EEOC investigation and gain an illegal advantage therein; and

3.    Eileen L. Bell, Debra Kirby and Robert A. Flores thereafter have used the internal mechanisms of the Department of Police of the City of Chicago to harass and intimidate a witness (me) in a pending federal EEOC investigation, in violation of federal law.

     I believe that an investigation by your office into the conduct of all four City of Chicago officials is appropriate. Thank you for your attention to this matter.

Very truly yours,

Joseph T. FitzSimmons
JfS/dc
encs.: 1
cc:    file

**EXHIBIT**

tabbies®

_3_

08CV3558
JUDGE ZAGEL
MAGISTRATE JUDGE COLE

DAJ

# G.O. 93-03-03    **Chicago Police Department**

TITLE:              **CONDUCT OF THE INVESTIGATION**

ISSUE DATE:         **13 January 1993**

EFFECTIVE DATE:     **15 January 1993**

DISTRIBUTION:       **C**

RESCINDS:

I.    **PURPOSE**

This addendum sets forth certain procedures relative to the manner in which a complaint against a Department member will be investigated.

II.   **CONDUCT OF THE INVESTIGATION**

A.    The ranking on-duty member of the unit which has initiated an investigation or to which an investigation has been assigned will immediately designate a command or supervisory member of the unit to conduct the investigation. If the accused is a member of the unit assigned to conduct the investigation, the immediate supervisor of the accused will be assigned the investigation unless that supervisor initiated the investigation, and is the complainant, or witnessed the incident which resulted in the complaint being filed, or is on extended medical, or is on furlough. Every effort will be made to ensure that the investigation is conducted in an impartial manner.
(Item II-A amended, 12 July 1994, General Order 93-03-03A).

B.    When copies of the Complaint Against Department Member report (CPD-44.202) relating to a specific complaint are received by the unit which will conduct the investigation, the name, rank or position, star/employee number, unit number and social security number of the member designated to conduct the investigation and the date and time of the assignment will be entered on the reports which will be distributed as follows:

1.    Original copy to the investigator.

2.    One copy to the investigator's commanding officer.

G.O. 93-03-03   CONDUCT OF THE INVESTIGATION
ISSUE DATE:   13 January 1993

3.    One copy returned to the Internal Affairs Division.

C.    The member assigned to investigate a complaint against a Department member will:

1.    contact all complainants and witnesses as soon as possible, ensuring that such complainants and witnesses are not unduly inconvenienced. If repeated efforts to contact a complainant or witness are unsuccessful after three days, the investigator will prepare and send a form letter (CPD-44.223 or CPD-44.224 as appropriate) by certified mail to the person requesting that the investigator be contacted immediately. Form letters and special envelopes for this purpose (Commodity Number 23-3489-5312 certified) are available from the Equipment and Supplies Section. In all instances, the investigator will record each date and time he or any other member designated to assist him in the investigation attempted to contact the person and the means of communication used (telephone, correspondence, personal visit) in the final report of the investigation.

2.    take written statements from complainants and witnesses when such statements will assist him in reaching a sound conclusion in the case. If the allegation is such that a recommendation for separation is unlikely, the statement(s) need not be formal question-and-answer or narrative form. If the allegation is such that the case is likely to result in a recommendation for separation, the statement(s) will be in question-and-answer form.

3.    if the accused is a member of AFSCME he will be afforded the prediscipliary provisions outlined in their collective bargaining agreement. In cases wherein criminal prosecution is not probable this will be understood to mean making available a copy of all investigatory reports/statements concerning the investigation, including the name of the complainant and any witness.

4.    inform the member against whom an allegation has been made, in writing, of the nature of the allegations before any interrogation begins.

a.    If the allegation indicates that criminal prosecution is not probable against the Department member, the investigator will have the accused member read and sign both a Notification of Charges/Allegations form (CPD-44.115) and an Administrative Proceedings Rights form (CPD-44.105, Rev.10A/92) to

acknowledge that he has received a written copy of the specific allegations made against him and that he has been advised of his statutory rights.  These forms will be prepared in duplicate: the original of each form will be placed in the investigative file, and the duplicate copy of each form will be given the accused member.  Signing of the forms is not a waiver of rights, it is an acknowledgment that the accused has received a written copy of the specific allegations made against him and that he has been given his rights.

b.    If criminal prosecution is probable against a Department member, the investigator will recite to the accused member his constitutional rights (Miranda warnings) contained within the Criminal Rights form (CPD-44.104) in clear and unequivocal words.  The accused member will then read and sign both a Notification of Charges/Allegations form and a Criminal Rights form.  These forms will be prepared in duplicate: the original copy of each form will be placed in the investigative file, and the duplicate copy of each form will be given to the accused member.  Signing of the forms is not a waiver of rights, it is an acknowledgment that the accused has received a written copy of the specific allegations made against him and that he has been given his rights.

c.    After the appropriate criminal and/or administrative rights forms have been read and signed by the accused member, he will be requested to sign either a Waiver of Counsel section or the Request to Secure Legal Counsel section of the Waiver of Counsel/Request to Secure Counsel form (CPD-44.106, Rev.10A/92).  This form will be prepared in duplicate: The original copy will be placed in the investigative file, and the duplicate copy will be given to the accused member.

d.    In the event an accused member refuses to execute any of the forms, such forms will be marked "Refused."  The forms will be dated and signed by any witness (es) to the refusal; the exact location (including room number, if applicable) of refusal will be noted, and the forms will be retained in the investigative file.  A duplicate copy of the forms will be given to the accused member.

e.    The advice of counsel to decline to answer questions will not excuse an accused member from responding when he has been

properly and lawfully ordered to do so by a member of higher rank.

f.    If the accused member has waived counsel, the investigator will renew the offer of the right to counsel each time an interrogation is resumed.  A written record will be made of the waiver of counsel or demand for counsel at each interrogation.  A request for a continuance to secure legal counsel will not be permitted to become a tactic to delay or otherwise obstruct the orderly process of the investigation.   Each time an interrogation is resumed, the investigator will advise the accused member of the applicable criminal or statutory rights prior to the interrogation.

g.    If the alleged act is a crime and the evidence is such that had the crime been committed by a private citizen it would have resulted in his arrest, the investigator will explain the circumstances to his commanding officer of exempt rank or, in his absence, the on-duty watch/unit commander who will contact the Assistant Deputy Superintendent, Internal Affairs Division, and Administrator of the Office of Professional Standards, or the on duty assistant deputy superintendent, Bureau of Operational Services.  The Assistant Deputy Superintendent, Internal Affairs Division, Administrator of the Office of Professional Standards, or the assistant deputy superintendent, as appropriate, will determine the further action to be taken, consulting the Office of the State's Attorney and appropriate Detective Division personnel for guidance when necessary.

h.    Upon the completion of the criminal portion of the investigation, the investigator will expressly inform the accused member that the criminal segment of the investigation has been concluded.  If an administrative investigation is then to be initiated, the investigator will expressly inform the accused member that any action taken during this segment cannot be used in the criminal investigation.  The accused member will also be informed that he must comply/cooperate with the administrative investigation which specifically relates to the alleged misconduct or to the performance of his official duties and that failure to comply/cooperate may result in further disciplinary action.

5.    interrogate the accused member-- remaining cognizant of the member's rights as defined in Addendum 1 of this order, the applicable provisions

of any agreement (contract) pertaining to the accused member and the General Order entitled "Interrogations: Field and Custodial" -- and other members who have knowledge of alleged misconduct, taking written statements when necessary.    If the allegation is such that a recommendation for separation is unlikely, the statement (s) may be in the form of reports from the member(s).  If the allegation is such that the case is likely to result in a recommendation for separation, the statement of the accused member will be in question-and-answer form.  Joint or duplicate copies of statements or reports will not be submitted.

6.      require an accused member to submit a report and answer questions which specifically, directly, and narrowly relate to the alleged misconduct or to the performance of his official duties.

7.      ensure that his commanding officer is informed of continuing developments in the investigation.   In addition, the investigator will prepare and submit the Notification RE: C.R. Investigation form (CPD-44.217) to his unit commanding officer when additional information relative to corrections, deletions, etc., concerning the accused, complainant, witness or victim is obtained.

8.      when the investigation of an allegation, supported by evidence, strongly indicates unfitness for duty, notify his commanding officer of exempt rank.

9.      not unduly extend the investigation to include minor infractions which are violations of Rules and Regulations or directives unless the infraction is reasonably related to the original allegation.  Infractions which involve violations of the law and other irregularities which are willful, devious, serious in nature, or which involve the integrity of the Department will result in further investigation and recommendations for disciplinary action, if warranted, no matter what the investigation discloses regarding the original complaint.

10.     terminate the investigation when it is determined at any time that the complaint is unfounded or the member clearly exonerated. Reports and statements containing information to justify the unfounding or exoneration of the accused will be forwarded in accordance with the provisions of Addendum 4 of this order.

11.     complete the investigation as soon as possible, but no later than thirty days after the date the complaint was received or on the date of any

08CV3558
JUDGE ZAGEL
MAGISTRATE JUDGE COLE

DAJ

authorized extension. If the investigation, due to its nature or complexity will require more than thirty days to complete, the investigator will submit a Request for Time Extension form (CPD-44.114) for **each** extension of time to his commanding officer for approval and forwarding to the Internal Affairs Division/Office of Professional Standards. Each time a request for an extension of time is submitted by an investigator, the reason for the request must be clearly justified.

12.   when the investigation is complete, classify the complaint as one of the following:

    a.    "Unfounded"    when the allegation is false or not factual.

    b.    "Exonerated"    when the incident occurred but the actions of the accused were lawful and proper.

    c.    "Not Sustained"    when there is insufficient evidence either to prove or disprove allegation.

    d.    "Sustained"    when the allegation is supported by substantial evidence to justify disciplinary action.

13.   before sustaining a complaint, ensure that "just cause" exists to support the allegation. The investigator will consider the following criteria in making this determination:

    a.    The member must have received forewarning or have foreknowledge of possible or probable consequences of his conduct. (This is satisfied by a published rule, regulation, or order made known to Department members.

    b.    A full and fair investigation established that the member did in fact violate or disobey a rule or order of the Department.

    c.    The accused was afforded an opportunity to respond to the allegations.

    d.    The investigation uncovered **substantial** evidence or proof of the allegation against the accused.

    e.    The rules, regulations, orders and penalties have been applied

# G.O. 93-03-03C    Chicago Police Department

| | |
|---|---|
| **TITLE:** | **CONDUCT OF THE INVESTIGATION** |
| **ISSUE DATE:** | **26 February 2003** |
| **EFFECTIVE DATE:** | **27 February 2003** |
| **DISTRIBUTION:** | **C** |
| **RESCINDS:** | **G.O. 93-03-03B** |

## I.    PURPOSE

This revision informs Department members of the change in disciplinary procedures for captains. Captains are no longer exempt from the Fair Labor Standards Act and may therefore be suspended for time periods other than one week increments.

## II.    REVISION

Item II-C-14-d-(3)is revised and reads:

(3) Suspension for a specific number of days, not to exceed 30.

> **NOTE:** *Exempt command members and civilian members exempt from coverage under the overtime provisions of the Fair Labor Standards Act may only be suspended in increments of the designated work week (7 calendar days). For example, suspensions can only be for 7, 14, 21, and 28 calendar days. A disciplinary suspension can never be less than 7 days.*

Terry G. Hillard
Superintendent of Police

New or revised material is indicated by *italics*.

02-131 SMK(PMD)

appropriate and the commanding office of the division or bureau to which the accused member is assigned. The commanding officer will also notify (by telephone and via a Personnel Action Request form CPD-11.612) the Director of the Finance Division (for payroll purposes as soon as possible.

Matt L. Rodriguez<br>Superintendent of Police

87-028 BW(HEH)

# G.O. 93-03-03A    **Chicago Police Department**

**TITLE:**                **CONDUCT OF THE INVESTIGATION**

**ISSUE DATE:**           **12 July 1994**

**EFFECTIVE DATE:**       **13 July 1994**

**DISTRIBUTION:**         **C**

**RESCINDS:**

I.    **PURPOSE**

This revision directs the assignment of a complaint investigation to the immediate supervisor of an accused member when the member is assigned to the unit that has been designated to conduct the investigation.

II.    **Item II-A is amended and will read as follows:**

A.    The ranking on-duty member of the unit which has initiated an investigation or to which an investigation has been assigned will immediately designate a command or supervisory member of the unit to conduct the investigation. If the accused is a member of the unit assigned to conduct the investigation, the immediate supervisor of the accused will be assigned the investigation unless that supervisor initiated the investigation, and is the complainant, or witnessed the incident which resulted in the complaint being filed, or is on extended medical, or is on furlough. Every effort will be made to ensure that the investigation is conducted in an impartial manner.

Matt L. Rodriguez<br>Superintendent of Police

94-064 JJH

disciplinary history when preparing the recommendation for disciplinary action portion on either the Summary Report (CPD-44.112) or the Summary Report Digest (CPD-11.112A). However, the investigator will not enter the accused member's complimentary history or disciplinary history into the narrative of any report. These histories will be utilized as attachments only.

15.   forward reports and statements which justify the finding in accordance with the provisions of Addendum 4 of this order.

D.   The commanding officer of the investigating unit is responsible for ensuring a complete and expeditious investigation of the complaint, and he may assign other members of the unit to assist in the investigation when the investigating member is off duty or otherwise unavailable. The commanding officer will periodically check the progress of the investigation and will record the dates of these progress checks on the reverse side of the Investigator's Copy of the Complaint Against Department Member report which is retained in unit files. The commanding officer of the investigative unit may recommend whether the accused member should be:

1.   retained in his present assignment;

2.   assigned to other duty where he is under close supervision and has limited contact with the public or other members;

3.   excused from duty; or

4.   immediately suspended.

E.   An accused member may be excused from duty without pay by his commanding officer for a period not to exceed two tours of duty. In unusual situations when an accused member should be excused for more than two tours of duty, such as over a holiday weekend, or when a change of assignment is recommended, permission will first be obtained either from the     Assistant Deputy Superintendent, Internal Affairs Division, an Administrator of the Office of Professional Standards, or the on duty assistant deputy superintendent for Operations Command. (In the event an accused member is excused from duty without pay, and the complaint is classified as unfounded, exonerated or not sustained as a result of the investigation, the member will receive pay for the period of time he was excused.) Whenever an accused member is excused from duty, his commanding officer will immediately notify (by telephone and in writing) the Internal Affairs Division or the office of Professional Standards, as

without discrimination.

14.   if the complaint is sustained:

   a.   request a copy of the accused member's "Summary of Previous Disciplinary Actions" from the Internal Affairs Division via PAX 0-603.

   b.   request a copy of the accused member's "Record of Previous Complimentary History" from the Personnel Division via PAX 0-342.

   c.   ensure the disciplinary action recommended is reasonably related to the seriousness of the member's proven offense, and gives appropriate consideration to the member's previous disciplinary and complimentary history.

   d.   ensure that the investigative file includes all relevant information and establishes the basis for recommending one of the following actions:

      (1)   Violation noted, no disciplinary action.

      (2)   Reprimand.

      (3)   Suspension for a specific number of days, not to exceed 30.

   **NOTE:**   *Exempt command members and civilian members exempt from coverage under the overtime provisions of the Fair Labor Standards Act may only be suspended in increments of the designated work week (7 calendar days). For example, suspensions can only be for 7, 14, 21, and 28 calendar days. A disciplinary suspension can never be less than 7 days.*

(Item II-C-14-d-(3) revised, 26 February 2003, General Order 93-03-03C).

      (4)   Separation.

   e.   specifically state that he has taken into consideration the accused member's previous complimentary history and